**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JAMES R. HAYNES,

     Plaintiff,

     v.

NAVY FEDERAL CREDIT UNION,

     Defendant.

Civil Action No. 11-00614 (CKK)

**MEMORANDUM OPINION**
(November 23, 2011)

Plaintiff James R. Haynes ("Haynes") brings this action *pro se* against Defendant Navy

Federal Credit Union ("NFCU"), asserting a variety of claims arising out of a home mortgage

loan extended to him by NFCU.  Currently before the Court is NFCU's [13] Motion to Dismiss

the Amended Complaint ("Motion to Dismiss").  Upon consideration of the parties' submissions,

the relevant authorities, and the record as a whole, the motion shall be GRANTED-IN-PART and

DENIED-IN-PART.[1]

## I.  BACKGROUND

*A.     Factual Background*

Haynes resides at 5601 16th Street, N.W., Washington, D.C. 20011.  *See* Compl., ECF

---

[1]  While the Court renders its decision today on the record as a whole, its consideration
has focused on the following documents, listed in chronological order of their filing: Def.'s
Mem. of P. & A. in Supp. of its Mot. to Dismiss the Am. Compl. ("Def.'s Mem."), ECF No.
[13]; Pl.'s Opp'n to Def.'s Mot. to Dismiss with P. & A. in Supp. Thereof ("Pl.'s Opp'n"), ECF
No. [15]; Def.'s Reply Mem. in Supp. of its Mot. to Dismiss the Am. Compl. ("Def.'s Reply"),
ECF No. [16].  Further, in an exercise of its discretion, the Court finds that holding oral argument
on the motion would not assist the Court in rendering its decision.  *See* LCvR 7(f).

No. [1], at 1.  On or about May 16, 2003, Haynes obtained a home mortgage loan from NFCU,

secured against his residence.  *See* Am. Compl., ECF No. [12], at 1.  Haynes and NFCU entered

into two written agreements relating to the home mortgage loan, a Promissory Note and a Deed

of Trust.  *See* Promissory Note, ECF No. [13-1]; Deed of Trust, ECF No. [13-2].[2]

Under the parties' agreements, Haynes was required to make monthly payments to NFCU

in the amount of $3,930.24.  *See* Promissory Note § 3.B.  In the event Haynes submitted a

payment that was "insufficient to bring the Loan current," then NFCU had the option of either

"return[ing] the payment" or "accept[ing] the payment."  Deed of Trust § 1.  If NFCU opted for

the latter course, then it was "not obligated to apply such payments" immediately upon

acceptance.  *Id.*  Rather, NFCU could "hold such unapplied funds until [Haynes] ma[de] payment

to bring the Loan current."  *Id.*  In the event Haynes did not bring the loan current "within a

reasonable period of time," NFCU was then required to "either apply such [unapplied] funds or

return them to [Haynes]."  *Id.*

Haynes alleges that, even though he has "continuously made monthly payments," NFCU

has "refused, in some cases, to process these payments according to the terms of the contract."

Am. Compl. at 1; *see also* Compl. at 2 ("[P]laintiff has paid all obligations under the promissory

note and deed of trust."); Pl.'s Opp'n at 2 ("[P]laintiff has continuously made payments to the

defendant and these payments were misplaced, lost, or misapplied.").   He claims that NFCU has

improperly either "return[ed] payments" to him or "shift[ed] payments into a 'suspense

---

[2]  The Promissory Note and Deed of Trust are attached to NFCU's opposition papers.
Consideration of these documents is proper because, when presented with a motion to dismiss, a
court may consider "documents . . . incorporated in the complaint."  *Equal Empl. Opportunity
Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

account.'"  Am. Compl. at 1.

Haynes further alleges that, on or about March 1, 2011, NFCU falsely reported to credit

reporting agencies that he was $36,552 behind on his payments and 61-90 days past due.  *Id.* at 2.

On April 1, 2011, Haynes notified three national credit reporting agencies that he disputed

NFCU's information.  *Id.*  Shortly thereafter, the three agencies notified NFCU of the dispute.

*Id.*  On April 14, 2011, NFCU reported that its prior information was accurate and that Haynes

was still $13,818 behind on his payments and 61-90 days past due.  *Id.*

      *B.*     *Procedural Background*

Haynes commenced this action on March 24, 2011.  *See* Compl.  NFCU subsequently

appeared and moved to dismiss the original Complaint.  *See* Def.'s Mot. to Dismiss, ECF No.

[2].  On May 6, 2011, Haynes filed an opposition.  *See* Pl.'s Mem. of P. & A. in Opp'n to Def.'s

Mot. to Dismiss Compl., ECF No. [6].  On May 17, 2011, in light of certain representations

made by Haynes in his opposition, the Court directed Haynes to file a notice with the Court

indicating whether he intended to amend his Complaint to add further claims or factual

allegations.  *See* Order (May 17, 2011), ECF No. [9].  When Haynes responded by stating that he

intended to amend the Complaint to add an additional cause of action for breach of contract and

to "flesh out more fully the previously filed tort allegations," Court Ordered Notice, ECF No.

[10], at 1, the Court granted Haynes leave to file an amended complaint and denied NFCU's

original motion to dismiss without prejudice to renew after tailoring it to speak to the claims and

allegations raised in Haynes' amended pleading, Order (May 31, 2011), ECF No. [11], at 2.

Haynes filed his Amended Complaint on June 17, 2011.  On July 5, 2011, NFCU filed the

instant Motion to Dismiss.  On July 22, 2011, Haynes filed his opposition.  On August 1, 2011,

NFCU filed its reply.  Accordingly, the motion is now fully briefed and ripe for adjudication.

## II.  LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. (8)(a), "in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  Rule 12(b)(6) provides a vehicle for parties to challenge the sufficiency of a complaint on the ground that it "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  When presented with a motion to dismiss for failure to state a claim, the district court must accept as true the well-pleaded factual allegations contained in the complaint. *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), *cert. denied*, __ U.S. __, 130 S. Ct. 2064 (2010).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 557).  Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  The plaintiff must provide more than just "a sheer possibility that a defendant has acted unlawfully."  *Id.* at 1950.  When a complaint's

4

well-pleaded facts do not enable a court, "draw[ing] on its judicial experience and common sense," "to infer more than the mere possibility of misconduct," the complaint has not shown that the pleader is entitled to relief. *Id.*

While "[a]ll pleadings shall be so construed as to do substantial justice," FED. R. CIV. P. 8(f), a document filed by a party proceeding *pro se* must be "liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (internal quotation marks omitted). For example, where a *pro se* party has filed multiple submissions, the district court must generally consider those filings together and as a whole. *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999); *see also Sieverding v. U.S. Dep't of Justice*, 693 F. Supp. 2d 93, 101 n.2 (D.D.C. 2010) (considering factual allegations in *pro se* plaintiff's prior pleadings even though they had technically been superceded by filing of amended complaint). Moreover, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94 (internal quotation marks omitted). Nonetheless, "[a] pro se complaint, like any other, must present a claim upon which relief can be granted." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981). Even with the liberality afforded *pro se* complaints, the district court "need not accept inferences unsupported by the facts alleged in the complaint or legal conclusions cast in the form of factual allegations." *Kaemmerling v. Lappin*, 553 F.3d 669, 667 (D.C. Cir. 2008) (internal quotation marks omitted).[3]

---

[3] Parenthetically, the Court notes that NFCU misapprehends the distinction between well-pleaded factual allegations, on the one hand, and conclusory allegations or legal conclusions cast in the form of factual allegations, on the other hand. Simply by way of example, NFCU characterizes Haynes' allegation that he has "continuously made monthly payments of principal and interest to NFCU but [NFCU] has refused, in some cases, to process those payments" as a "broad unfounded allegation" and intimates that the Court should disregard the allegation altogether. Def.'s Mem. at 5. But this allegation, like several others identified by NFCU, does

# III.  DISCUSSION

In its [13] Motion to Dismiss, NFCU seeks the dismissal of all six claims asserted by Haynes in his [12] Amended Complaint.  The Court addresses each claim in turn.

### A.      Count I: Breach of Contract

In Count I, labeled "Breach of Contract," Haynes alleges that, on or about May 23, 2003, he entered into a mortgage contract with [NFCU]."  Am. Compl. at 1.  According to Haynes, "[u]nder this contract[,] payment[s] made by [him] were first to be applied to escrow accounts and $ 3,390.34 [sic] applied to interest and principal."  *Id.*  He contends that NFCU "breached this contract by not applying payments as agreed but either shifting payments into a 'suspense account' or returning payments to [him]."  *Id.*

To state a claim for breach of contract under District of Columbia law,[4] a plaintiff must allege (1) a valid contract between the parties, (2) an obligation or duty arising out of the contract, (3) breach of that obligation or duty, and (4) damages caused by that breach.  *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009).  "Obviously, one cannot breach a contract without breaching a particular obligation created under the contract."  *Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 54-55 (D.D.C. 2010).

---

not fall within the category of "[t]hreadbare recitals of the elements of a cause of action" or "conclusory statements" that are not entitled to a presumption of truth.  *Ashcroft*, 129 S. Ct. at 1949.  Whether Haynes' factual allegations are sufficiently specific to state a plausible claim for relief is a separate question, one the Court addresses below.  *See infra* Part III.

   [4]  Although neither party specifies the law applicable to Haynes' claim for breach of contract, the Deed of Trust includes an express choice-of-law provision selecting District of Columbia law.  *See* Deed of Trust § 16.  Regardless, the Court perceives no apparent conflict between the laws of two jurisdictions that would require a choice-of-law analysis.

1.      Haynes Fails to State a Plausible Claim for Breach of Contract Based on
NFCU's Method for Prioritizing Payments

Haynes rests his breach of contract claim in part on the allegation that NFCU was

contractually obligated to apply payments "first to . . . escrow accounts and [then] . . . to interest

and principal."  Am. Compl. at 1.  But the Deed of Trust, which is incorporated into the

Amended Complaint, provides that "all payments accepted and applied by [NFCU] shall be

applied in the following order of priority: (a) interest due under the Note; (b) principal due under

the Note; (c) amounts due under Section 3 [Escrow Items]."  Deed of Trust § 2.  This language is

unambiguous: payments are to be applied first to interest, then to the principal, and then, and

only then, to escrow items.  In other words, the factual predicate for Haynes' claim that NFCU

improperly applied payments is flatly contradicted by the plain language of the parties'

agreement.  Simply put, Haynes fails to state a plausible claim for breach of contract insofar as it

rests on a counterfactual contractual duty to prioritize payments towards escrow items over

interest and principal.  *See Davis v. World Sav. Bank, FSB*, __ F. Supp. 2d __, 2011 WL

3796170, at *10 (D.D.C. Aug. 29, 2011) (concluding that plaintiff failed to state a plausible

claim for breach of contract where allegations were "flatly contradicted" by the express terms of

the agreement); *Maib v. Fed. Deposit Ins. Corp.*, 771 F. Supp. 2d 14, 18 (D.D.C. 2011)

(concluding that plaintiff failed to state a plausible claim for breach of contract where the claim

was "contradicted by the plain language on the face of the contract documents").  Accordingly,

the Court shall GRANT NFCU's [13] Motion to Dismiss insofar as it seeks dismissal of the

component of Haynes' breach of contract claim (Count I) that is predicated on an allegation that

NFCU failed to apply payments "first to . . . escrow accounts and [then] . . . to interest and

principal."  Am. Compl. at 1.

    2.       Haynes States a Plausible Claim for Relief Based on NFCU's Return of Payments and Holding of Payments In a "Suspense Account"

Haynes also alleges that NFCU breached the Promissory Note and Deed of Trust by (1) "returning payments to [him]" and (2) "shifting payments into a 'suspense account." Am. Compl. at 1. On its own, neither allegation would be sufficient to support a claim for breach of contract. On the one hand, the Deed of Trust authorizes NFCU to refuse and return payments under certain circumstances. Specifically, NFCU "may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current." Deed of Trust § 1. On the other hand, the Deed of Trust authorizes NFCU to hold payments in what Haynes refers to as a "suspense account" under certain circumstances. Specifically, NFCU may elect to "accept any payment or partial payment insufficient to bring the Loan current" and, in such a case, NFCU "is not obligated to apply such payments at the time such payments are accepted" but instead "may hold such unapplied funds until [Haynes] makes payment to bring the Loan current." *Id.*

In both cases, it is hypothetically possible for NFCU's conduct, as it has been alleged by Haynes, to be consistent with the terms of the parties' agreements. And in both cases, the factual predicate for such a conclusion is the same: Haynes must have been delinquent at the time payments were made. Or, more accurately, the payments Haynes made must have been "insufficient to bring the Loan current." *Id.* Seizing on this possibility, NFCU faults Haynes for "mak[ing] no allegations . . . that the funds remitted were sufficient to bring the loan current." Def.'s Mem. at 7; *see also* Def.'s Reply at 2 ("Plaintiff has not offered any indication that the loan was current at the time payment . . . was received by NFCU.").[5] The argument is misplaced.

---

    [5] NFCU also faults Haynes for failing to "provid[e] evidence" that his loan was current at the time payments were made. Def.'s Mem. at 7. However, at this procedural posture, Haynes is

Haynes alleges that he "has continuously made monthly payments of principal and interest to NFCU." Am. Compl. at 1; *see also* Compl. at 2 ("[P]laintiff has paid all obligations under the promissory note and deed of trust."); Pl.'s Opp'n at 2 ("The monthly principal and interest due was $3,930.24.[6] * * * [P]laintiff has continuously made payments to the defendant and these payments were misplaced, lost, or misapplied."). Elsewhere, he alleges that NFCU falsely reported that his payments were past due. Am. Compl. at 2. Implicit in these allegations is that Haynes has consistently made *timely* monthly payments to NFCU and/or that the payments he made were sufficient "to bring the Loan current." Deed of Trust § 1. A reasonable reading of the Amended Complaint suggests that Haynes is alleging that he has fully performed under the parties' agreements. *Cf.* Fed. R. Civ. P. 9(c) ("In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed.").

Taking this as true (as the Court must at this stage), Haynes has stated a plausible claim for breach of contract. NFCU does not claim that it had the discretion to return payments or hold them in a "suspense account" unless the payments were insufficient to bring the loan current. Accordingly, the Court shall DENY NFCU's [13] Motion to Dismiss insofar it seeks dismissal of the component of Haynes' breach of contract claim (Count I) that is predicated on his allegations that NFCU improperly (1) returned payments that were sufficient to bring the loan current or (2) shifted payments that were sufficient to bring the loan current into a "suspense account."

In sum, the Court shall GRANT NFCU's [13] Motion to Dismiss insofar as it seeks

---

not required to marshal evidence in support of his claims.

[6] Under the Promissory Note, Haynes was required to make monthly payments in the amount of $3,930.24. *See* Promissory Note § 3.B.

dismissal of the component of Haynes' breach of contract claim (Count I) that is predicated on an allegation that NFCU failed to apply payments "first to . . . escrow accounts and [then] . . . to interest and principal."  Am. Compl. at 1.  However, the Court shall DENY NFCU's [13] Motion to Dismiss insofar it seeks dismissal of the component of Haynes' breach of contract claim (Count I) that is predicated on his allegations that NFCU improperly (1) returned payments that were sufficient to bring the loan current or (2) shifted payments that were sufficient to bring the loan current into a "suspense account."

       B.     *Count II: Accounting and Mandatory Injunctive Relief*

     In Count II, labeled "Accounting and Mandatory Injunctive Relief," Haynes seek "an accounting of the funds" he has allegedly remitted to NFCU and "injunctive relief [] prohibit[ing] NFCU from failing to process payments."  Am. Compl. at 1.  NFCU tenders three arguments for the dismissal of Count II.  The Court addresses each in turn.

     First, NFCU argues that Haynes' "request for an accounting [is] premature."  Def.'s Reply at 2.  In particular, NFCU claims that Haynes has failed to comply with the procedural requirements of the Real Estate Settlement Procedures Act ("RESPA"), which requires lenders to respond to written requests from borrowers seeking information about the servicing of a loan.  *See* 12 U.S.C. § 2605(e).  But Haynes does not bring Count II under RESPA.  So far as the Court can tell, Haynes either seeks to bring a legal claim for what has historically been referred to as an "action of account" or seeks an accounting in equity as part of the overall relief in this case.[7]  *See generally* 1A C.J.S. *Accounting* §§ 1, 6 (2010).  NFCU has failed to supply a basis for the

---

     [7]  If the latter, Haynes' request for an accounting would not, strictly speaking, be a stand-alone claim at all.

dismissal of the claim that Haynes actually intends to pursue.[8]

Second, NFCU argues that Haynes cannot seek injunctive relief because he has failed to satisfy the four-prong test used by courts in this Circuit when analyzing motions for preliminary injunctive relief. *See generally Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006). The argument is without merit for the simple reason that Haynes has not moved for preliminary injunctive relief. If Haynes does seek preliminary injunctive relief at some point in this action, the Court will then inquire whether he has met the four-prong test governing such relief. Until then, NFCU's argument is premature.

Third, and finally, NFCU argues that Haynes cannot seek an injunction "forcing NFCU to accept [Haynes'] payments" because such an order would "run[] contrary to the terms agreed upon by the parties." Def.'s Mem. at 7. This argument presupposes that Haynes payments were "insufficient to bring the Loan current." Deed of Trust § 1. NFCU does not claim that it had the discretion to refuse payments that were sufficient to bring the loan current. At this procedural posture, the Court has no occasion to address the matter further, as there appears to be a dispute as to whether Haynes was current on the loan at the time payments were made.

For the foregoing reasons, the Court shall DENY NFCU's [13] Motion to Dismiss insofar as it seeks dismissal of Count II.

---

[8] To the extent NFCU intended to argue that RESPA displaces the common-law cause of action or remedy for an accounting, it offers no explanation or authority for the argument. *See generally Garduno v. Nat'l Bank of Arizona*, 738 F. Supp. 2d 1004, 1008 (D. Ariz. 2010). The Court declines to reach the issue in the absence of adequate briefing from the parties.

C.      Count III: Intentional Infliction of Emotional Distress

In Count III, labeled "Intentionsl [sic] Infliction of Emotional Distress," Haynes claims

that he has suffered emotional distress due to NFCU calling his house "on numerous occasions"

and because he is "frightened that [NFCU] will initiate foreclosure proceedings."  Am. Compl. at

2.  He also contends that NFCU's conduct has been "unseemly and outrageous" because NFCU

has allegedly "falsely report[ed] to credit agencies that [he] is in arrears on his loan" and has

allegedly "refused to provide [him with] an Interest Statement for the tax year 2010."[9]  Pl.'s

Opp'n at 3.

Under District of Columbia law,[10] the tort of intentional infliction of emotional distress

requires (1) "extreme and outrageous conduct" on the part of the defendant that (2) "intentionally

or recklessly" (3) causes the plaintiff "severe emotional distress."  *Kotsch v. District of*

*Columbia*, 924 A.2d 1040, 1045 (D.C. 2007) (internal quotation marks omitted).  The plaintiff

must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond

all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a

civilized community."  *District of Columbia v. Tulin*, 994 A.2d 788, 800 (D.C. 2010) (internal

quotation marks and citations omitted); *accord Williams v. District of Columbia*, 9 A.3d 484, 494

(D.C. 2010).  Deciding whether the plaintiff's allegations are sufficient to meet this demanding

---

[9]  The Court shall assume, without deciding, that these allegations, which appear in Haynes' opposition, are properly before the Court.

[10]  In addressing Haynes' claim for intentional infliction of emotional distress, both parties cite exclusively to case law interpreting District of Columbia law.  *See* Def.'s Mem. at 8-9; Pl.'s Opp'n at 3.  Where, as here, "all parties assume that District of Columbia law controls," "[t]he Court need not . . . question the parties' assumptions on that point."  *Davis v. Grant Park Nursing Home LP*, 639 F. Supp. 2d 60, 65 (D.D.C. 2009).

standard is, in the first instance, a question for the court.  *Homan v. Goyal*, 711 A.2d 812, 818 (D.C.), *as amended by* 720 A.2d 1152 (D.C. 1998).

Haynes has failed to meet this standard.  His allegations that NFCU has called his house on "numerous occasions," has "falsely report[ed] to credit agencies that he is in arrears on his loan," has "refused to provide [him with] an Interest Statement," and may at some point in the future "initiate foreclosure proceedings," whether considered together or independently, fall short of pointing to conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Tulin*, 994 A.2d at 800; *see also Busby v. Capital One, N.A.*, 772 F. Supp. 2d 268, 285-86 (D.D.C. 2011) (concluding that plaintiff's allegations that defendant improperly assessed escrow charges and other penalties and "misrepresent[ed]" that it was the holder of a note rather than the loan servicer did not "plausibly rise[] to the level of 'atrocious' conduct"); *Ihebereme*, 730 F. Supp. 2d at 54-55 (concluding that plaintiff's allegations that defendant refused to accept mortgage payments, failed to credit mortgage payments in a timely manner, overcharged plaintiff, and discriminated against plaintiff failed to "rise to the level of being atrocious or outrageous").  Accordingly, the Court shall GRANT NFCU's [13] Motion to Dismiss insofar as it seeks dismissal of Count III.

       D.      *Count IV: Intentional Damage to Credit*

In Count IV, labeled "Intentional Damage to Credit," Haynes alleges that he "was informed by his credit report that [NFCU] had reported to credit agencies on or about March 1, 2011 that [he] was $36,552, 61-90 days past due."  Am. Compl. at 2.  He further alleges that, after he disputed the report with three national credit agencies, NFCU confirmed its prior report

and further reported that Haynes still "owed $13,818 and was 61-90 days late on his account." *Id.* Implicit in this account is an allegation that NFCU inaccurately reported the magnitude of Haynes' debt and/or the duration of his delinquency.

       1.    <u>Haynes Cannot Pursue a Claim Under Section 1681s-2(a) of Title 15</u>

Under the Fair Credit Reporting Act (the "FCRA"),[11] "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s-2(a)(1)(A). In addition, "[a] person shall not furnish information relating to a consumer to any consumer reporting agency if . . . the person has been notified by the consumer . . . that the specific information is inaccurate; and . . . the information is, in fact, inaccurate." *Id.* § 1681s-2(a)(1)(B). Both these obligations arise under Section 1681s-2(a) of Title 15. However, there is no private right of action for violations of Section 1681s-2(a)(1) of Title 15. *See id.* §§ 1681s(c)(1)(B), 1681s-2(c)-(d); *see also SimmsParris v. Countrywide Fin. Corp.*, 652 F.3d 355, 358 (3d Cir. 2011); *Chiang v. Verizon New England Inc.*, 595 F.3d 26, 35 (1st Cir. 2010); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1162 (9th Cir. 2009), *cert. denied sub nom. FIA Card Servs., N.A. v. Gorman*, __ U.S. __, 131 S. Ct. 71 (2010); *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 149 (4th Cir. 2008). Accordingly, the Court shall GRANT NFCU's [13] Motion to Dismiss insofar as it seeks the dismissal of the component of Count IV that is based on

---

[11] Haynes does not dispute NFCU's characterization of Count IV as a claim arising under the FCRA. *See* Def.'s Mem. at 9; Pl.'s Opp'n at 4. Indeed, he has adopted that characterization himself. *See* Compl. at 3 ("Plaintiff seeks damages of $1,000,000 *for this violation of the Fair Credit Reporting Act*.") (emphasis added). If Haynes intended to pursue a state-law claim in connection with these allegations, he has failed to provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47.

an alleged violation of Section 1681s-2(a) of Title 15.

    2.    <u>Haynes Can Pursue a Claim Under Section 1681s-2(b) of Title 15</u>

The foregoing conclusion is not dispositive of Count IV in its entirety because Haynes'

allegations are also consistent with a claim that NFCU violated Section 1681s-2(b) of Title 15,

which provides that once a furnisher of information receives notice of "a dispute with regard to

the completeness or accuracy of any information provided" from a credit reporting agency, it

must conduct an investigation into the completeness and confirm and ensure the accuracy of the

information in dispute.  15 U.S.C. § 1681s-2(b)(1).  *See* Am. Compl. at 2 ("Plaintiff wrote a

letter on April 1, 2011 to three national credit agencies disputing the claim of NFCU.  The

agencies informed NFCU of this dispute within five days."); Pl.'s Opp'n at 4 ("[T]he plaintiff

notified the reporting agencies, [] the reporting agencies notified the defendant, and, finally, []

the defendant did not correct the false report.").

As NFCU conceded in earlier submissions but conveniently omits from its Motion to

Dismiss, the FCRA *does* provide a private right of action for violations under Section 1681s-

2(b).  *See* Def.'s Mem. of P. & A. in Supp. of its Mot. to Dismiss the Compl., ECF No. [2-1], at

12; *see also SimmsParris*, 652 F.3d at 358; *Gorman*, 584 F.3d at 1154; *Wang v. Asset*

*Acceptance, LLC*, No. C 09-4797 SI, 2010 WL 4321565, at \*3 (N.D. Cal. Nov. 1, 2010).  If the

furnisher of information negligently or willfully failed to meet the requirements of Section

1681s-2(b), a consumer may bring suit under Sections 1681n and 1681*o*.  *See* 15 U.S.C. § 1681n

(civil liability for willful noncompliance); *id.* § 1681*o* (civil liability for negligent

noncompliance).[12]  Because NFCU has failed to supply any other ground for dismissal, the Court

shall DENY NFCU's [13] Motion to Dismiss insofar as it seeks dismissal of the component of

Count IV that is based on an alleged violation of Section 1681s-2(b) of Title 15.

In sum, the Court shall GRANT NFCU's [13] Motion to Dismiss insofar as it seeks the

dismissal of the component of Count IV that is based on an alleged violation of Section 1681s-

2(a) of Title 15 and DENY NFCU's [13] Motion to Dismiss insofar as it seeks dismissal of the

component of Count IV that is based on an alleged violation of Section 1681s-2(b) of Title 15.

E.      *Count V: IRS Code Violations or Equity Relief*

In Count V, labeled "IRS Code Violations or Equity Relief," Haynes alleges that (1) he

"did not receive an accurate or correct interest statement from [NFCU] for the tax year 2010" and

(2) NFCU is "taking property" from him by "refus[ing] to credit any interest payments for 2011."

Am. Compl. at 2-3.  He contends that "[t]hese actions are a violation of the IRS code, or in the

alternative actionable in equity."  *Id.* at 2.

1.      Haynes Has Conceded Count V Insofar as it Relates to Alleged Violations
        of the Internal Revenue Code and Accompanying Regulations

NFCU argues that there is no private right of action for violations of the pertinent

provisions the Internal Revenue Code.  *See* Def.'s Mem. at 10.  Haynes admits that he is unable

to point to a provision in the Internal Revenue Code or the accompanying regulations requiring a

lender to furnish a borrower an interest statement and concedes that Count V should be dismissed

to the extent it rests on alleged violations of the Internal Revenue Code and accompanying

---

[12]  In its reply papers, NFCU argues that Haynes has failed to allege "malice of willful intent," Def.'s Reply at 3, which is not the precise standard for claims arising under Section 1681n and 1681*o* of Title 15.  Even assuming, *arguendo*, that Haynes was required to meet that standard with respect to Count IV, the Court finds that he has done so.  *See infra* Part III.F.

regulations.  *See* Pl.'s Opp'n at 5-6.  Based on this explicit concession, the Court shall GRANT

NFCU's [13] Motion to Dismiss insofar as it seeks the dismissal of the component of Count V

alleging violations of the Internal Revenue Code and accompanying regulations.

2.   <u>Haynes Fails to State a Plausible Claim for "Equity Relief"</u>

Although he concedes that he has no substantive right under the Internal Revenue Code

and accompanying regulations, Haynes nonetheless suggests that he intends to pursue what he

refers to as the "equity portion" of Count V.  Pl.'s Opp'n at 6.  However, a plaintiff seeking to

proceed in equity still bears the burden of pleading a plausible cause of action.  *Travelers Ins.*

*Co. v 633 Third Assocs.*, 973 F.2d 82, 87 (2d Cir. 1992).  In other words, Haynes' mere

invocation of the Court's equitable powers does not relieve him from his burden of showing that

he has a substantive right to support his claim.  *Cf. E. Tenn. Natural Gas Co. v. Sage*, 361 F.3d

808, 823 (4th Cir.), *cert. denied*, 543 U.S. 978 (2004).

Haynes has failed to discharge this burden.  After conceding that he has no substantive

right under the Internal Revenue Code and accompanying regulations, Haynes only claims that he

"has been deprived of a property right under the Fifth Amendment of the Constitution because an

interest statement is property which [he] has a right to use as a tax deduction to offset income in

IRS Form 1040."  Pl.'s Opp'n at 5.  Even assuming, *arguendo*, that Haynes has identified a

cognizable property interest to bring suit for a deprivation of property under the Fifth

Amendment of the Constitution, "the party charged with the deprivation must be a person who

may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937

(1982).  NFCU is a private entity and cannot fairly be described as a "state actor."  As a result,

Haynes cannot rely on the Fifth Amendment to support his self-styled claim for "equity relief."

17

Accordingly, and because Haynes has otherwise failed to identify a substantive right that would support this Court's exercise of its equitable powers, the Court shall GRANT NFCU's [13] Motion to Dismiss insofar as it seeks the dismissal of the "equity portion" of Count V.[13]

To summarize, the Court shall GRANT NFCU's [13] Motion to Dismiss insofar as it seeks the dismissal of Count V in its entirety.

F.    *Count VI: Defamation*

In Count VI, Haynes alleges that NFCU "published defamatory credit information with three (3) national credit agencies stating that [he] did not pay his mortgage according to a contract." Am. Compl. at 3.  NFCU argues that this claim is preempted by the FCRA, which provides, in relevant part, that "no consumer may bring any action or proceeding in the nature of defamation . . . with respect to the reporting of [credit] information . . . except as to false information furnished with malice or willful intent to injure such consumer." 15 U.S.C. § 1681h(e).[14]  True, where the alleged defamation concerns the sort of reporting covered by the FCRA, the plaintiff must plead that the defendant acted maliciously or with a willful intent to injure the plaintiff.  *Avery v. United States*, 534 F. Supp. 2d 40, 42 (D.D.C. 2008) (citations omitted); *see also Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir.) ("[N]o defamation or

---

[13]  Whether Haynes is entitled to equitable relief in connection with other claims is a question for another day.

[14]  NFCU does not contend that Count VI is barred by a different provision of the FCRA governing the preemption of state law.  *See* 15 U.S.C. § 1681t(b)(1)(F).  Over the years, "courts have struggled to reconcile an apparent conflict between the two preemption provisions." *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 427-28 (S.D.N.Y. 2010); *see generally* Mark H. Tyson, *State Law Furnisher Liability Claims and the FCRA—The State of Confusion*, 63 CONSUMER FIN. L. Q. REP. 19 (2009).  Given the narrow basis for NFCU's Motion to Dismiss, the Court has no occasion to address the "apparent conflict" here.

like actions are allowed under the [FCRA] unless malice or willful intent is alleged.") (citation

omitted), *cert. denied*, 449 U.S. 835 (1980).  But under the liberal pleading requirements of the

Federal Rules of Civil Procedure, "[m]alice . . . may be alleged generally." FED. R. CIV. P. 9(b).

In this case, Haynes has alleged that NFCU intentionally reported that Haynes was delinquent on

his mortgage payments with either a reckless disregard for the truth or knowing that its

statements were false.  *See* Compl. at 3 ("[NFCU] intentionally reported in February 2011 to

national credit bureaus that the plaintiff was $36,552 delinquent for 61-90 days on mortgage

payments when [NFCU] knew this allegation to be false."); Am. Compl. at 2 ("[NFCU] had

reported to credit agencies on or about March 1, 2011 that [he] was $36,552, 61-90 days past

due."); Pl.'s Opp'n at 6 (alleging that NFCU "falsely reported to credit agencies that [he] was in

arrears 61-90 days in the amount of $36,552 recklessly knowing that the publication was

false.").[15]  Taking into account Haynes' *pro se* status, the Court finds that these allegations are

sufficient to withstand a motion to dismiss based on the preemption provision relied upon by

NFCU.  *See Edmond v. Am. Educ. Servs.*, Civil Action No. 10-0578 (JDB), 2010 WL 4269129,

at *3 (D.D.C. Oct. 28, 2010); *Calloway v. Green Tree Servicing, LLC*, 607 F. Supp. 2d 669, 667

---

[15]  NFCU invites the Court to strictly confine its consideration to the specific allegations in the Amended Complaint and to disregard any statements made by Haynes in other submissions that clarify the nature of his claims.  *See* Def.'s Reply at 10.  The Court declines the invitation. While NFCU is correct that "a complaint may not be amended by the briefs in opposition to a motion to dismiss,'" *Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C. 2003) (quoting *Coleman v. Pension Benefit Guar. Corp.*, 94 F. Supp. 2d 18, 24 n.8 (D.D.C. 2000)), "where the non-movant is proceeding *pro se* and has filed multiple submissions in opposition to [a] motion to dismiss, the district court should endeavor to read the party's filings together and as a whole," *Fennell v. AARP*, 770 F. Supp. 2d 118, 121 (D.D.C. 2011) (citing *Richardson*, 193 F.3d at 548).  Balancing these considerations, the Court exercises its discretion to consider statements made in Haynes' original Complaint and in his opposition to NFCU's Motion to Dismiss.  These statements clarify, rather than amend, Haynes' proffered basis for claiming that NFCU acted maliciously.

(D. Del. 2009); *Beuster v. Equifax Info. Servs.*, 435 F. Supp. 2d 471, 479-80 (D. Md. 2006); *Dornhecker v. Ameritech Corp.*, 99 F. Supp. 2d 918, 931-32 (N.D. Ill. 2000). At this procedural posture, it is neither necessary nor appropriate for the Court to decide whether Haynes will be able to carry his burden to establish that NFCU acted maliciously or with a willful intent to injure him. Accordingly, the Court shall DENY NFCU's [13] Motion to Dismiss insofar as it seeks the dismissal of Count VI.

## IV.  CONCLUSION

The Court has considered the remaining arguments tendered by the parties and has concluded that they are without merit. Accordingly, and for the reasons set forth above, the Court shall GRANT-IN-PART and DENY-IN-PART NFCU's [13] Motion to Dismiss. Specifically, the Court shall GRANT NFCU's Motion to Dismiss with respect to: (a) the component of Count I (Breach of Contract) that is predicated on an allegation that NFCU breached the Promissory Note and Deed of Trust by failing to apply payments first to escrow accounts and then to interest and principal; (b) Count III (Intentional Infliction of Emotional Distress) in its entirety; (c) the component of Count IV (Intentional Damage to Credit) that is based on an alleged violation of Section 1681s-2(a) of Title 15; and (d) Count V (IRS Code Violations or Equity Relief) in its entirety. Meanwhile, the Court shall DENY NFCU's Motion to Dismiss with respect to: (a) the component of Count I (Breach of Contract) that is predicated on allegations that NFCU improperly returned payments that were sufficient to bring the loan current or shifted payments that were sufficient to bring the loan current into a "suspense account"; (b) Count II (Accounting and Mandatory Injunctive Relief) in its entirety; (c) the component of Count IV (Intentional Damage to Credit) that is based on an alleged violation of

Section 1681s-2(b) of Title 15; and (d) Count VI (Defamation) in its entirety.  An appropriate

Order accompanies this Memorandum Opinion.


Date:   November 23, 2011

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge