UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES R. HAYNES,

    Plaintiff,

    v.

NAVY FEDERAL CREDIT UNION

    Defendant.

Civil Action No. 11-0614 (CKK)

## MEMORANDUM OPINION
(June 10, 2014)

Plaintiff James R. Haynes ("Haynes" or "Plaintiff") brings this action *pro se*[1] against Defendant Navy Federal Credit Union ("NFCU" or "Defendant"), asserting a variety of claims arising out of a home mortgage loan extended to him by NFCU. Presently before the Court is Defendant's [85] Renewed Motion for Summary Judgment. Upon consideration of the pleadings[2], the relevant legal authorities, and the record as a whole, the Court GRANTS IN PART and HOLDS IN ABEYANCE IN PART Defendant's [85] Renewed Motion for Summary Judgment. Specifically, Plaintiff's claims for (1) Breach of Contract and (2) Accounting and

---

[1] Although Plaintiff is proceeding in this action *pro se*, he is an attorney, *see* Def.'s MSJ, Ex. E (Haynes Dep.) at 8:20-22 (noting that Plaintiff has a law degree); *id.* at 22:21-22 (noting that Plaintiff has an active law practice), and is therefore presumed to have knowledge of the legal system. *Curran v. Holder*, 626 F. Supp. 2d 30, 33 (D.D.C. 2009). As a result, he is not entitled to the same level of solicitude often afforded non-attorney litigants proceeding without legal representation. *Richards v. Duke University*, 480 F.Supp.2d 222, 234 (D.D.C. 2007).

[2] Def.'s Renewed Mot. for Summ. J., ECF No. [85] ("Def.'s MSJ"); Def.'s Mem. In Supp. Of Renewed Mot. for Summ. J., ECF No. [85-1] ("Def.'s Mem."); Def.'s Stmt. of Undisp. Facts, ECF No. [85-4] ("Def.'s Stmt."); Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. [88] ("Pl.'s Opp'n"); Def.'s Reply Mem. In Supp. of Renewed Mot. for Summ. J., ECF No. [90] ("Def.'s Reply"); Def.'s Resp. to Pl.'s Stmt. of Genuine Issues for Trial, ECF No. [90-1] ("Def.'s Resp. Stmt.").

Mandatory Injunctive Relief are dismissed. The Court holds in abeyance a decision on Plaintiff's claims for (1) Intentional Damage to Credit and (2) Defamation, pending supplemental briefing from the parties.

## I. BACKGROUND

### A. Factual Background

On or about May 16, 2003, Plaintiff obtained a home mortgage loan (the "Loan") from Defendant, secured by property located at 5601 16th Street, N.W., Washington, DC 20011 (the "Property"). Def.'s Stmt. ¶ 1. The Loan was governed by a Note dated May 16, 2003 (the "Note") and Deed of Trust dated May 16, 2003 and recorded in the District of Columbia land records at Document No. 2003088532 (the "Deed of Trust"). *Id.* ¶ 2. The Deed of Trust provides that Plaintiff shall pay to NFCU funds necessary to pay "Escrow Items" which includes, among other costs, taxes and insurance premiums for the Property. *Id.* ¶ 3. The Deed of Trust also provides that NFCU may waive the borrower's obligation to pay costs for Escrow Items at any time and that the waiver must be provided in writing. *Id.* ¶ 4. The Deed of Trust does not set out the criteria which NFCU must use when determining whether to waive the escrow requirement. *Id.* ¶ 5. At closing, Plaintiff signed a "District of Columbia Escrow Disclosure and Agreement Authorization" permitting the payment of taxes to the D.C. Government by NFCU. *Id.* ¶ 6.

In 2009, the District of Columbia Office of Tax and Revenue erroneously determined that Plaintiff claimed two homestead exemptions for the years 2007 and 2008. The D.C. Government assessed $20,451.13 in back taxes for the Property and increased the amount of tax owed in the future for the property. *Id.* ¶ 8. NFCU was not responsible for the tax exemption error and made no representations to the District of Columbia regarding Plaintiff's homestead exemption. *Id.* ¶

9. NFCU received notice of the D.C. Government Assessment from the District of Columbia Office of Taxation. *Id.* ¶ 10. NFCU was authorized to pay, and did pay, the D.C. Government Assessment of $20,451.14. *Id.* ¶¶ 11-12.

After NFCU paid the D.C. Government Assessment, Plaintiff's escrow account was in arrears and the required amount due to maintain the escrow account was $21,252.82. *Id.* ¶ 13. NFCU sent Plaintiff a notice that the D.C. Government Assessment had been paid and gave Plaintiff the option of paying the entire increase of $21,252.82 within 30 days, or spreading the payments over the next 12 months, increasing his total monthly payments by $1,771.07 to $6,761.07 for 12 months. *Id.* ¶ 14. Subsequently, apparently having been alerted to its error by Plaintiff, the District of Columbia refunded the tax over-payments to NFCU, which totaled $22,247.97, on August 26, 2010. *Id.* ¶ 15. The refunded payments were applied to Plaintiff's escrow account and he was issued two checks due to the excess funds in his escrow account as a result of the tax refund. *Id.* ¶ 16.

Beginning in September 2010, Plaintiff stopped making escrow payments as required under the Deed of Trust and instead attempted to pay taxes and insurance directly to the D.C. Government and insurance company. *Id.* ¶ 17. On September 9, 2010, Plaintiff sent Defendant a fax stating "[t]he purpose of this memorandum is to inform you that I will pay directly the escrow payments for the referenced property." Def.'s MSJ, Ex. J (Haynes Fax). He cited as reasons for this decision, "(a) under DC law I have a legal right to pay my own real estate taxes; and (b) NFCU has continually miscalculated the amount the [sic] escrow taxes to be paid." *Id.* Plaintiff tendered monthly payments to NFCU of $3,930.24 for each month after August 2010. Def.'s Stmt. ¶ 19. That amount is equal to the principal and interest he owed monthly, but does *not* include any escrow payments. *Id.*

The Deed of Trust includes the following language regarding partial payments:

> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.

Def.'s MSJ, Ex. B (Deed of Trust) at 4. NFCU, operating pursuant to the language entitling a Lender to hold or return funds insufficient to bring the loan current "until Borrower makes payment to bring the loan current," began (a) placing these funds into a suspense account, (b) returning them to Plaintiff, or (c) applying them to the balance of his loan. Def.'s Resp. Stmt. ¶ 20.

On September 9, 2010, Plaintiff requested a waiver of his escrow payments. Pl.'s Opp'n at 10. The Deed of Trust provides that:

> Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any and all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any and all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.

Def.'s MSJ, Ex. B (Deed of Trust) at 4-5. Plaintiff's request for a waiver of his escrow payments was denied. Def.'s Stmt. ¶ 23; Pl.'s Opp'n at 4.

NFCU reported information to credit bureaus regarding the status of Plaintiff's loan. Def.'s Stmt. ¶ 33. Defendant states that this information was automatically produced by NFCU's computer system using data from Plaintiff's account. *Id.* ¶ 36. Plaintiff subsequently disputed

the accuracy of this reporting through the credit agencies. Def.'s Ex. R (Aff. of Kenneth D. Huggins) ¶ 4. Defendant states that, upon receiving these objections, it performed an investigation into the accuracy of the information and confirmed the results. *Id.*

### B. Procedural History

Plaintiff commenced this action on March 24, 2011, bringing various claims against Defendant concerning the mortgage on his property. *See Haynes v. Navy Federal Credit Union*, 825 F.Supp.2d 285, 288 (D.D.C. 2011). On November 23, 2011, this Court granted-in-part and denied-in-part Defendant's Motion to Dismiss. *Id.* at 298. Plaintiff's first claim of Breach of Contract was permitted to proceed in part. In his Amended Complaint, Plaintiff alleged the following:

> On or about May 23, 2003, Plaintiff entered in a mortgage contract with the Defendant Loan Number 8010498296 collateralized by the Plaintiff's home. Under this contract payment[s] made by the Plaintiff were first to be applied to escrow accounts and $3,390.34 applied to interest and principal. NAVY FEDERAL CREDIT UNION ("NFCU") has breached this contract by not applying payments as agreed but either shifting payments into a "suspense account" or returning payments to Plaintiff. Plaintiff seeks damages of $750,000.

Am. Compl., ECF No. [12] at 1. The Court's Memorandum Opinion resolving Defendant's Motion to Dismiss allowed this Breach of Contract claim to proceed, to the extent predicated on allegations that NFCU improperly returned payments that were sufficient to bring the loan current or shifted payments that were sufficient to bring the loan current into a "suspense account." *Haynes*, 825 F.Supp.2d at 298.

The Court's Memorandum Opinion similarly allowed three other claims to proceed. First, the Court denied Defendant's motion to dismiss Plaintiff's second claim for an accounting, allowing Plaintiff's action to proceed to the extent Plaintiff either sought to bring a legal claim for what has historically been referred to as an "action of account" or sought an accounting in

5

equity as part of the overall relief in the case. *Id.* at 293. The Opinion also allowed Plaintiff's claim for Intentional Damage to Credit to proceed to the extent based on an alleged violation of Section 1681s-2(b) of Title 15 of the United States Code. *Id.* at 295-96. Finally, the Court's Opinion allowed Plaintiff's Defamation claim to proceed to the extent Plaintiff alleged that NFCU published defamatory credit information with three national credit agencies stating that he did not pay his mortgage according to a contract, with either a reckless disregard for the truth or knowing that its statements were false. *Id.* at 297-98.

On April 13, 2012, roughly a year into this litigation, the suspense account attributable to Plaintiff's loan had a balance of $35,132.03. *See* Def.'s Mem. of P. & A. in Supp. of its Mot. for Payment of Funds into the Registry of the Court, ECF No. [35-1] at 3. On this date, Defendant filed a motion with the Court to pay the entirety of the suspense account into the Registry of the Court and to have Mr. Haynes tender his monthly payments (including principal, interest, taxes, and insurance) in the amount of $4,606.14 into the Registry of the Court pending the outcome of this litigation. *See* Def.'s Mot. for Payment of Funds into the Registry of the Court, ECF No. [35]. The Court granted this motion on May 3, 2012, *see* Order, ECF No. [37], and since June 1, 2012, Plaintiff has paid his monthly mortgage payments in the amount of $4,606.14 into the Registry of the Court. Pursuant to the Court's Order, NFCU has petitioned the Court for periodic disbursement from the balance of the Registry for payments of property taxes and insurance as they may become due, in order to protect the subject property from loss as well as to avoid the attachment of any tax lien during the course of this litigation. *See, e.g.*, Def.'s Mot. to Disburse Funds from the Registry of the Court, ECF No. [92].

Discovery in this litigation closed on November 16, 2012. *See* Order, ECF No. [53] at 3. On January 14, 2013, Defendant filed a [64] Motion for Summary Judgment requesting that this

6

Court dismiss Plaintiff's remaining claims. The same day, Plaintiff filed his own [67] Motion for Partial Summary Judgment. Subsequently, on February 25, 2013, Defendant filed its [79] Motion to Amend Response to Plaintiff's Request for Admission, which sought to amend a response to one of Plaintiff's Requests for Admission. By [82] Order dated September 12, 2013, the Court granted Defendant's Motion to Amend pursuant to Federal Rule of Civil Procedure 36(b). Because both Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment relied on the unamended response to Plaintiff's Request for Admission, the Court denied both motions for summary judgment without prejudice, and instructed the parties to re-file these motions if they continued to seek the relief requested. *Id.*

Defendant subsequently filed the present [85] Renewed Motion for Summary Judgment. Plaintiff did not renew his motion for partial summary judgment, but did file an Opposition to Defendant's Motion. Defendant subsequently filed a Reply. Accordingly, Defendant's motion is now ripe for review.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record – including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence – in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. FED. R. CIV. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III. DISCUSSION

### A. Breach of Contract

The Court's Memorandum Opinion allowed Plaintiff's Breach of Contract to proceed to the extent predicated on allegations that NFCU improperly returned payments that were sufficient to bring the loan current or shifted payments that were sufficient to bring the loan current into a "suspense account." *Haynes*, 825 F.Supp.2d at 298. Accordingly, in order to survive summary judgment, Plaintiff must show the existence of a genuine issue of material fact as to Defendant's improper return of payments sufficient to bring the loan current or shifting of payments that were sufficient to bring the loan current into a "suspense account." Plaintiff does not succeed in this task.

Plaintiff concedes that the payments he tendered to NFCU after August 2010 were incomplete. Pl.'s Opp'n at 2 (conceding Def.'s Stmt. ¶¶ 17, 19). The Deed of Trust required Plaintiff to pay NFCU not only the principal and interest on his loans, but also funds sufficient to cover escrow items. Def.'s Stmt. ¶ 4. In addition, at closing, Plaintiff signed a "District of Columbia Escrow Disclosure and Agreement Authorization" permitting the payment of taxes to the D.C. Government by NFCU. *Id.* ¶ 6. Yet beginning in August 2010, Plaintiff stopped making these required escrow payments to NFCU, tendering only an amount sufficient to cover the principal and interest payments on his loan. Plaintiff failed to make these escrow payments despite the fact that he did not receive a waiver from NFCU that would have allowed him to make his escrow payments directly, rather than through NFCU. Def.'s Stmt. ¶ 23; Pl.'s Opp'n at 4.

Because Plaintiff was not making his escrow payments in the absence of waiver, he was no longer making payments sufficient to bring his loan current, as required by the Deed of Trust. Pursuant to the Deed of Trust, Defendant was not "obligated to apply such [partial] payments at

9

the time such payments are accepted" but rather could "hold such unapplied funds until Borrower makes payment to bring the loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower." Def.'s MSJ, Ex. B. at 4. Accordingly, faced with insufficient payments, NFCU was entitled to hold these unapplied funds in a suspense account or return them to Plaintiff. Therefore, NFCU did not "improperly return[] payments that were sufficient to bring the loan current" nor did it "shift[] payments that were sufficient to bring the loan current into a 'suspense account.'" *Haynes*, 825 F.Supp.2d at 298. Because Plaintiff concedes that he failed to make payments sufficient to bring the loan current, neither of these actions constitutes a breach of contract.[3]

Having conceded that he tendered only a portion of his required payments, Plaintiff devotes the majority of his Opposition to arguing that NFCU improperly denied his request for a waiver of escrow payments. Pl.'s Opp'n at 3-7. Plaintiff argues that the denial of his waiver request was procedurally improper, claiming that NFCU failed to follow the appropriate internal criteria and misconstrued his payment history in denying his application for a waiver. Yet whether this waiver should have been granted is a different question from the one at issue, and

---

[3] At several points in his Opposition brief, Plaintiff appears to question the *existence* of the suspense account. *See* Pl.'s Opp'n at 3 ("The Plaintiff had [sic] never seen and does not believe the existence of any 'suspense account'. The Plaintiff has paid the Defendant $3,390.39 monthly since September 2010 to May 2012, a total of 20 months totaling at least $71,198.19. What happen [sic] to these funds."); *id.* at 8. This unsupported speculation is plainly insufficient to cast doubt on Defendant's affidavit testimony stating that Plaintiff's incomplete payments were placed in a suspense account, and that such action is NFCU's standard practice when a borrower tenders partial payments. *See* Def.'s MSJ, Ex. T (Decl. of Vicki Parry) ¶¶ 2-4. Furthermore, to the extent Plaintiff objects to Defendant's placing the balance of the suspense account into the Registry of the Court, this objection comes far too late. As noted, on April 13, 2012, Defendant filed a motion to pay the funds then-currently held in the suspense account into the Registry of the Court. *See* Def.'s Mot. for Payment of Funds into the Registry of the Court, ECF No. [35]. On May 3, 2012, after the time for Plaintiff to file a response had passed without any objection from Plaintiff, the Court granted this motion. *See* Order, ECF No. [37]. Plaintiff will not be heard to challenge this decision indirectly in his Opposition to Defendant's Motion for Summary Judgment filed more than a year later.

one that Plaintiff has not alleged in his Complaint and that was not considered at the motion to dismiss stage. As noted, Plaintiff's Amended Complaint – the operative pleading in this litigation – alleges only that NFCU "has breached this contract by not applying payments as agreed by either shifting payments into a 'suspense account' or returning payments to Plaintiff." Am. Compl. ECF No. [12] at 1. Furthermore, in its Memorandum Opinion addressing Defendant's Motion to Dismiss, the Court allowed this Breach of Contract claim to proceed to the extent predicated on Plaintiff's allegations that NFCU "improperly [1] returned payments that were sufficient to bring the loan current or [2] shifted payments that were sufficient to bring the loan current into a 'suspense account.'" *Haynes*, 825 F.Supp.2d at 298 (brackets added). Nowhere does Plaintiff allege NFCU's failure to provide a waiver of his escrow payments as the basis for his Breach of Contract claim. Plaintiff may not, at this advanced stage of the proceedings, effectively disregard his Complaint and the Court's Memorandum Opinion construing this pleading in order to assert a completely different claim for breach of contract in his summary judgment briefs. Indeed, "[i]t is well established that a party may not amend its complaint or broaden its claims through summary judgment briefing." *District of Columbia v. Barrie*, 741 F.Supp.2d 250, 263 (D.D.C. 2010). *See also DSMC, Inc. v. Convera Corp.*, 479 F.Supp.2d 68, 84 (D.D.C. 2007) (rejecting plaintiff's attempt to broaden claims and thereby amend its complaint in opposition to defendant's motion for summary judgment."); *Sharp v. Rosa Mexicano*, 496 F.Supp.2d 93, 97 n. 3 (D.D.C. 2007) ("[P]laintiff may not, through summary judgment briefs, raise the new claims . . . because plaintiff did not raise them in his complaint, and did not file an amended complaint."); *Sloan v. Urban Title Servs., Inc.*, 652 F.Supp.2d 51, 62 (D.D.C. 2009) ("Plaintiff cannot amend her complaint by merely taking discovery on a subject or by filing a motion for summary judgment; she must amend her

complaint in accordance with Fed. R. Civ. P. 15(a)."); *Quinn v. District of Columbia*, 740 F.Supp.2d 112, 130-31 (D.D.C. 2010).

Moreover, even if the question of whether NFCU's failure to grant the escrow waiver constitutes a breach of contract *were* properly before the Court, it is unlikely that Plaintiff has raised a genuine issue of material fact as to this issue. Plaintiff argues that NFCU failed to properly follow internal criteria for granting waiver requests. Pl.'s Opp'n at 5. Yet such internal procedures appear nowhere in the Deed of Trust, the applicable contract here. Moreover, Plaintiff concedes that the language in the Deed of Trust governing the granting of waiver requests is permissive, not mandatory. Pl.'s Opp'n at 3 (conceding Def.'s Stmt. ¶ 4). *See also PCH Mut. Ins. Co., Inc. v. Casualty & Surety, Inc.*, 750 F.Supp.2d 125, 144 (D.D.C. 2010) (noting that "as a general matter of contract law, the word 'may' is viewed as a permissive, rather than mandatory, term, particularly when used in contraposition to the word 'shall'"). He also concedes that the Deed of Trust itself does not set out the criteria which NFCU must use when determining whether to waive the escrow requirement. Pl.'s Opp'n at 3 (conceding Def.'s Stmt. ¶ 5). Furthermore, Plaintiff makes no argument that the failure to grant his waiver request constitutes a violation of the duty of good faith.

Nevertheless, the Court need not conclusively resolve this question, because, for the reasons discussed, Plaintiff may not transform his Complaint by way of his summary judgment briefing. The Court's Memorandum Opinion addressing Defendant's Motion to Dismiss limited Plaintiff's Breach of Contract claim to his allegations that NFCU "improperly [1] returned payments that were sufficient to bring the loan current or [2] shifted payments that were sufficient to bring the loan current into a 'suspense account.'" *Haynes*, 825 F.Supp.2d at 298 (brackets added). In light of his conceded failure to tender complete payments, Plaintiff has

failed to show a genuine issue of material fact as to either of these contentions. Therefore, his Breach of Contract claim is dismissed.

### B. Action on an Account

The Court's Memorandum Opinion allowed Plaintiff's second claim to proceed to the extent Plaintiff either sought to bring a legal claim for what has historically been referred to as an "action of account" or sought an accounting in equity as part of the overall relief in the case. *Haynes*, 825 F.Supp.2d at 293. For the reasons discussed below, neither of these claims is sufficient to survive summary judgment.

"The action of account lies where one has received goods or money for another in a fiduciary capacity, to ascertain and recover the balance due. It can only be maintained where there is such a relationship between the parties, as to raise an obligation to account, and where the amount due is uncertain and unliquidated." BLACK'S LAW DICTIONARY (9th ed. 2009) (quoting Benjamin J. Shipman, *Handbook of Common-Law Pleading* § 56, at 144 (Henry Winthrop Ballantine ed., 3d ed. 1923)).

Whatever the continued vitality of this cause of action, *see Ivinson v. Hutton*, 98 U.S. 79, 79 (1878) (describing the action as "almost obsolete"); *Simmons v. Morrison*, 13 App. D.C. 161, 1898 WL 15568, at *6 (D.C. Cir. 1898) ("The old common law action of account, as we know, was exceedingly troublesome and complicated, and for that reason has fallen into disuse"), the action of account is not applicable here because NFCU was not a fiduciary of Plaintiff. "The relationship between a debtor and a creditor is ordinarily a contractual relationship and not a fiduciary relationship." *Ponder v. Chase Home Fin., LLC*, 666 F.Supp.2d 45, 49 (D.D.C. 2009) (citing *Overseas Private Inv. Corp. v. Industria de Pesca, N.A., Inc.*, 920 F.Supp. 207, 210 (D.D.C. 1996)). "However, if a special relationship of trust or confidence exists in a particular

case, a fiduciary relationship may arise in the lender-borrower context." *Ellipso, Inc. v. Mann*, 541 F.Supp.2d 365, 373 (D.D.C. 2008) (internal quotation marks and citation omitted). Yet here, Plaintiff points to no facts suggesting that his relationship with NFCU rises above an arm's length business relationship and reaches a higher level of trust. Rather, he offers only the unadorned assertion that Defendant "failed to exercise its fiduciary duty to a member by not crediting to principal and interest which was an option" under the Deed of Trust. Pl.'s Opp'n at 8. Such conclusory statements, devoid of factual support, are insufficient to show a fiduciary relationship. *See Henok v. Chase Home Fin., LLC*, 922 F.Supp.2d 110, 120 (D.D.C. 2013) (rejecting claim for breach of fiduciary duty where plaintiff did "not plead any facts which show the existence of a special relationship of trust or confidence with Chase extending beyond his standard debtor-creditor relationship."). Accordingly, even if the action of account possesses any continued vitality, Plaintiff has provided an insufficient basis to survive summary judgment as to this claim.

Plaintiff's request for an accounting in equity as part of the overall relief in this case also fails, as this is a remedy premised on a breach of fiduciary duty or contract that Plaintiff does not establish. "An accounting is a detailed statement of debits and credits between parties arising out of a contract or a fiduciary relation." *Bates v. Nw. Human Servs., Inc.*, 466 F.Supp.2d 69, 103 (D.D.C. 2006) (quotation marks omitted). "Such relief may be obtained *at the close of litigation* . . . as long as the plaintiff is able to show that 'the remedy at law is inadequate.'" *Id.* (quoting 1 Am. Jur. 2d Accounts & Accounting § 59 (2006)) (emphasis added). An account therefore may "be appropriate when a plaintiff is unable 'to determine how much, if any, money is due to him from another.'" *Id.* (quoting *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir. 1972)). Importantly, "an accounting is 'an extraordinary remedy' that is only appropriate, if at all, after

liability has been determined." *Armenian Assembly of America, Inc. v. Cafesjian*, 692 F.Supp.2d 20, 48 (D.D.C. 2010). On this point, in its prior Memorandum Opinion in this case, the Court noted that to the extent Haynes sought "an accounting in equity as part of the overall relief in this case", "Haynes' request for an accounting would not, strictly speaking, be a stand-alone claim at all." *Haynes*, 825 F.Supp.2d at 293 & n. 7. Here, for the reasons discussed, Plaintiff has failed to show both the existence of a fiduciary relationship (and thus a breach of this duty) as well as a breach of contract. In the absence of these forms of liability, the remedy of an accounting would be inappropriate.

### C. Intentional Damage to Credit and Defamation

The Court's Memorandum Opinion addressing Defendant's Motion to Dismiss allowed Plaintiff's claim for Intentional Damage to Credit to proceed to the extent based on an alleged violation of Section 1681s-2(b) of Title 15 of the United States Code. *Id.* at 295-96. Under 15 U.S.C. § 1681s-2(b), upon being notified by a credit reporting agency of a dispute as to the accuracy of its information, the furnisher of information to a credit reporting agency "has duties under [the Fair Credit Reporting Act] to investigate the disputed information and correct it as necessary." *Ihebereme v. Capital One, N.A.*, 933 F.Supp.2d 86, 111 (D.D.C. 2013). Similarly, the Court's previous Memorandum Opinion allowed Plaintiff's Defamation claim to proceed, where Plaintiff alleged that NFCU published defamatory credit information with three national credit agencies stating that he did not pay his mortgage according to the contract, with either a reckless disregard for the truth or knowing that its statements were false. *Haynes*, 825 F.Supp.2d at 297-98.

In arguing that summary judgment is appropriate on both of these counts, Defendant primarily contends that the counts should be dismissed because all the information it provided to

credit agencies regarding Plaintiff's loan was accurate. Def.'s Mem. at 11, 13-14. Defendant provides some discussion of the details of the information reported to credit agencies in its present filings, *see* Def.'s Resp. Stmt. ¶ 33, but the Court has determined that a more fulsome explanation of the information reported to credit agencies would be of aid in rendering a decision on Defendant's motion.

As discussed, beginning in September 2010, Plaintiff concedes that he failed to pay the escrow payments required on his Loan, and thus failed to make the complete payments required of him. Defendant therefore argues that NFCU's provision of information confirming the fact of Plaintiff's default is accurate. Yet while the Court agrees that Defendant accurately reported the *fact* of Plaintiff's default, additional briefing is necessary so that the Court can assess Defendant's contention that it accurately reported the *extent* of Plaintiff's default.

The following table summarizes Defendant's reporting to credit agencies regarding Plaintiff's loan for the period of September 2010 until March 2011. Def.'s MSJ, Ex. K (Credit Reporting History). The Court has added the "+/- Amount Past Due" column, which represents the monthly change in "Amount Past Due."

| Date of Report | Monthly Payment | Amount Past Due | +/- Amount Past Due |
|---|---|---|---|
| 9/21/10 | $6,761 | $13,522 | -- |
| 10/21/10 | $6,761 | $18,539 | + $5,017 |
| 11/22/10 | $6,761 | $23,557 | + $5,018 |
| 12/21/10 | $6,761 | $28,574 | + $5,017 |
| 1/21/11 | $6,761 | $31,946 | + $3,372 |
| 2/22/11 | $6,761 | $36,552 | + $4,606 |
| 3/21/11 | $4,606 | $13,818 | - $22,734 |

*Id.* In its supplemental briefing, Defendant should address several issues about these totals.

First, Defendant's reporting continues to state that Plaintiff's total monthly payment was $6,761 until March 2011. Yet other documents in the record show that as of October 2010, Plaintiff's total monthly payment was only $4,606. *See* Def.'s MSJ, Ex. U (Dec. 2010 Escrow Analysis Documents) (stating that effective 10/1/2010, Plaintiff's monthly payment dropped from $6,761.07 to $4,606.14). In its reply brief, Defendant explains this apparent inconsistency by pointing out that Plaintiff ceased making escrow payments in September 2010, at a time when his payment was $6,761. Def.'s Resp. Stmt. ¶ 33. Accordingly, Defendant states, the credit reporting history identifies a "monthly payment" of $6,761 after October 2010, because Plaintiff still owed a payment at this amount from September 2010. But this explanation leads to other questions. For example, what caused the "monthly payment" to switch to Plaintiff's *actual* monthly payment of $4,606 in March 2011? Based on a review of Plaintiff's account history, the Court notes that the amount may have switched to $4,606 in the March 2010 reporting period because on March 2, 2011, Defendant appears to have applied several of Plaintiff's incomplete payments to the balance of his loan. Def.'s Ex. I (Mortgage Account Activity Statement) at 3-4. These payments may have satisfied the outstanding September 2010 payment for $6,761. However, without any explanation from the parties, the Court lacks sufficient information to know whether its understanding of Plaintiff's account and credit reporting history is correct.

Second, Defendant should explain why the amount past due column increased by $5,017 (or $5,018) for October, November, and December of 2010, and then dropped by $3,372 for January 2011. These amounts do not correspond to either Plaintiff's pre-October 2010 monthly payment ($6,761) or his post-October 2010 monthly payment ($4,606). Accordingly, the Court is concerned that Defendant may have been over-reporting the increase in Plaintiff's amount past

17

due. While the Court notes that there is deposition testimony from Defendant's employee Mary Warnock, the former Assistant Vice President of Mortgage and Equity Servicing, stating that beginning October 1, 2010, Plaintiff's total monthly payment was $5,017.50, neither party references this amount in its briefs and it appears to directly contradict evidence cited by the parties. *See* Def.'s Ex. P (Warnock Dep.) at 7:7-8. *See also* Pl.'s Ex. A (Def.'s Resp. to Pl.'s First Set of Interrogatories) ¶ 13. The $3,372 total for January 2011 also appears unexplained in the record. The Court's calculations reveal that the average change in amount past due between October 2010 and January 2011 is $4,606, as ($5,017 + $5,018 + $5,017 +$3,372) ÷ 4 = $4,606. However, without further explanation, the Court is unwilling to draw conclusions based on its own calculations guessing at the relationship between these figures. In addition, to the extent Defendant was over-reporting the extent of Plaintiff's amount past due until December 2010, only to under-report the amount past due in January 2011, Defendant should explain how this fact can be reconciled with its statement that all of the information it reported was accurate.

Third, Defendant should explain why Plaintiff's amount past due in September 2010 was $13,522, rather than simply $6,761. Defendant states in its briefs, and Plaintiff concedes, that Plaintiff ceased making complete payments in September 2010. Therefore, the Court understands that because his monthly payment in September 2010 was $6,761, the amount past due for September 2010 increased by $6,761. Yet the source of the existing $6,761 in this total remains unexplained. Without this information, the Court cannot understand whether Defendant accurately reported that the amount past due on Plaintiff's loan was $36,552 past due on March 1, 2011. *See* Def.'s Opp'n at 9.

Finally, Defendant's supplemental brief should explain the $22,734 drop in "amount past due" between February and March of 2011. As noted, based on Plaintiff's account history, on

March 2, 2011, Defendant appears to have applied several of Plaintiff's incomplete payments to the balance of his loan. Def.'s Ex. I at 3-4. Yet, according to the Court's calculations, these payments total only $19,651.20, leaving $3,083 of the $22,734 decrease unexplained. Without this information, the Court cannot understand whether Defendant accurately reported the amount past due on Plaintiff's loan as $13,818 on April 14, 2011. *See* Am. Compl., ECF No. [12] at 2.

Defendant shall file this supplemental briefing by no later than June 17, 2014. Plaintiff shall be permitted to file a reply by no later than June 30, 2014. Until this supplemental briefing is received the Court will hold in abeyance any ruling on Plaintiff's claims for Intentional Damage to Credit and Defamation.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and HOLDS IN ABEYANCE IN PART Defendant's [85] Renewed Motion for Summary Judgment. Specifically, Plaintiff's claims for (1) Breach of Contract and (2) Accounting and Mandatory Injunctive Relief are dismissed. The Court holds in abeyance a decision on Plaintiff's claims for (1) Intentional Damage to Credit and (2) Defamation, pending supplemental briefing from the parties. Defendant shall file a supplemental brief addressing the issues raised in this opinion by no later than June 17, 2014. If he chooses to, Plaintiff may file a reply by no later than June 30, 2014. An appropriate Order accompanies this Memorandum Opinion.

Dated: June 10, 2014

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge