UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JAMES R. HAYNES,

    Plaintiff,

v.

NAVY FEDERAL CREDIT UNION

    Defendant.

Civil Action No. 11-0614 (CKK)

**MEMORANDUM ORDER**
(October 22, 2014)

Plaintiff James R. Haynes ("Haynes" or "Plaintiff") brings this action *pro se*[1] against Defendant Navy Federal Credit Union ("NFCU" or "Defendant"), asserting a variety of claims arising out of a home mortgage loan extended to him by NFCU. Presently before the Court is the portion of Defendant's [85] Renewed Motion for Summary Judgment that was held in abeyance, first, by this Court's June 10, 2014 [96] Order and [97] Memorandum Opinion and then held in continued abeyance by this Court's August 27, 2014 [101] Memorandum Order. By its June Order, the Court granted Defendant's motion in part and dismissed Plaintiff's claims for (1) Breach of Contract and (2) Accounting and Mandatory Injunctive Relief. The Court held in abeyance the portion of Defendant's motion seeking dismissal of Plaintiff's claims for (1) Intentional Damage to Credit and (2) Defamation, pending supplemental briefing from the

---

[1] Although Plaintiff is proceeding in this action *pro se*, he is an attorney, *see* Def.'s Renewed Mot. for Summ. J., ECF No. [85] ("Def.'s MSJ"), Ex. E (Haynes Dep.) at 8:20-22 (noting that Plaintiff has a law degree); *id.* at 22:21-22 (noting that Plaintiff has an active law practice), and is therefore presumed to have knowledge of the legal system. *Curran v. Holder*, 626 F.Supp.2d 30, 33 (D.D.C. 2009). As a result, he is not entitled to the same level of solicitude often afforded non-attorney litigants proceeding without legal representation. *Richards v. Duke University*, 480 F.Supp.2d 222, 234 (D.D.C. 2007).

parties. Upon consideration of Defendant's [100] Supplemental Memorandum in Support of its Renewed Motion for Summary Judgment ("Def.'s Suppl. Brief"), the Court concluded in its August 27, 2014, Memorandum Order that further supplemental briefing from Defendant was necessary to understand why Defendant reported the amount past due on Plaintiff's loan on September 21, 2010, as $13,522. Upon consideration of Defendant's [102] Second Supplemental Memorandum in Support of Its Renewed Motion for Summary Judgment ("Def.'s Second Suppl. Mem."), the Court concludes that Defendant has adequately addressed all of the questions previously raised by the Court regarding the accuracy of Defendant's reporting on the status of the loan. Accordingly, the remaining portion of Defendant's [85] Renewed Motion for Summary Judgment, seeking dismissal of Plaintiff's claims for (1) Intentional Damage to Credit and (2) Defamation, is now GRANTED.

## I. BACKGROUND

### A. Factual Background

On or about May 16, 2003, Plaintiff obtained a home mortgage loan (the "Loan") from Defendant, secured by property located at 5601 16th Street, N.W., Washington, DC 20011 (the "Property"). Def.'s Stmt. of Undisp. Facts, ECF No. [85-4] ("Def.'s Stmt.") ¶ 1. The Loan was governed by a Note dated May 16, 2003 (the "Note") and Deed of Trust dated May 16, 2003 and recorded in the District of Columbia land records at Document No. 2003088532 (the "Deed of Trust"). *Id.* ¶ 2. The Deed of Trust provides that Plaintiff shall pay to NFCU funds necessary to pay "Escrow Items" which includes, among other costs, taxes and insurance premiums for the Property. *Id.* ¶ 3. The Deed of Trust also provides that NFCU may waive the borrower's obligation to pay costs for Escrow Items at any time and that the waiver must be provided in writing. *Id.* ¶ 4. The Deed of Trust does not set out the criteria which NFCU must use when

determining whether to waive the escrow requirement. *Id.* ¶ 5. At closing, Plaintiff signed a "District of Columbia Escrow Disclosure and Agreement Authorization" permitting the payment of taxes to the D.C. Government by NFCU. *Id.* ¶ 6.

In 2009, the District of Columbia Office of Tax and Revenue erroneously determined that Plaintiff claimed two homestead exemptions for the years 2007 and 2008. The D.C. Government assessed $20,451.13 in back taxes for the Property and increased the amount of tax owed in the future for the property. *Id.* ¶ 8. NFCU was not responsible for the tax exemption error and made no representations to the District of Columbia regarding Plaintiff's homestead exemption. *Id.* ¶ 9. NFCU received notice of the D.C. Government Assessment from the District of Columbia Office of Taxation. *Id.* ¶ 10. NFCU was authorized to pay, and did pay, the D.C. Government Assessment of $20,451.14. *Id.* ¶¶ 11-12.

After NFCU paid the D.C. Government Assessment, Plaintiff's escrow account was in arrears and the required amount due to maintain the escrow account was $21,252.82. *Id.* ¶ 13. NFCU sent Plaintiff a notice that the D.C. Government Assessment had been paid and gave Plaintiff the option of paying the entire increase of $21,252.82 within 30 days, or spreading the payments over the next 12 months, increasing his total monthly payments by $1,771.07 to $6,761.07 for 12 months. *Id.* ¶ 14. Subsequently, apparently having been alerted to its error by Plaintiff, the District of Columbia refunded the tax over-payments to NFCU, which totaled $22,247.97, on August 26, 2010. *Id.* ¶ 15. The refunded payments were applied to Plaintiff's escrow account and he was issued two checks due to the excess funds in his escrow account as a result of the tax refund. *Id.* ¶ 16.

Beginning in September 2010, Plaintiff stopped making escrow payments as required under the Deed of Trust and instead attempted to pay taxes and insurance directly to the D.C.

Government and insurance company. *Id.* ¶ 17. On September 10, 2010, Plaintiff sent Defendant a fax stating "[t]he purpose of this memorandum is to inform you that I will pay directly the escrow payments for the referenced property." Def.'s MSJ, Ex. J (Haynes Fax). He cited as reasons for this decision, "(a) under DC law I have a legal right to pay my own real estate taxes; and (b) NFCU has continually miscalculated the amount the [sic] escrow taxes to be paid." *Id.* Plaintiff tendered monthly payments to NFCU of $3,930.24 for each month after August 2010. Def.'s Stmt. ¶ 19. That amount is equal to the principal and interest he owed monthly, but does *not* include any escrow payments. *Id.*

> The Deed of Trust includes the following language regarding partial payments:
>
> Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.

Def.'s MSJ, Ex. B (Deed of Trust) at 4. NFCU, operating pursuant to the language entitling a Lender to hold or return funds insufficient to bring the loan current "until Borrower makes payment to bring the loan current," began (a) placing these funds into a suspense account, (b) returning them to Plaintiff, or (c) applying them to the balance of his loan. Def.'s Resp. to Pl.'s Stmt. of Genuine Issue for Trial, ECF No. [90-1] ("Def.'s Resp. Stmt.) ¶ 20.

On September 9, 2010, Plaintiff requested a waiver of his escrow payments. Pl.'s Opp'n to Def.'s Mot. for Summ. J., ECF No. [88] ("Pl.'s Opp'n") at 10. The Deed of Trust provides that:

> Borrower shall pay Lender the Funds for Escrow Items unless Lender waives
> Borrower's obligation to pay the Funds for any and all Escrow Items. Lender may
> waive Borrower's obligation to pay to Lender Funds for any and all Escrow Items
> at any time. Any such waiver may only be in writing. In the event of such waiver,
> Borrower shall pay directly, when and where payable, the amounts due for any
> Escrow Items for which payment of Funds has been waived by Lender and, if
> Lender requires, shall furnish to Lender receipts evidencing such payment within
> such time period as Lender may require.

Def.'s MSJ, Ex. B at 4-5. Plaintiff's request for a waiver of his escrow payments was denied. Def.'s Stmt. ¶ 23; Pl.'s Opp'n at 4.

NFCU reported information to credit bureaus regarding the status of Plaintiff's loan. Def.'s Stmt. ¶ 33. Defendant states that this information was automatically produced by NFCU's computer system using data from Plaintiff's account. *Id.* ¶ 36. The following table summarizes Defendant's reporting to credit agencies regarding Plaintiff's loan for the period of September 2010 until March 2011. Def.'s MSJ, Ex. K (Credit Reporting History). The Court has added the "+/- Amount Past Due" column, which represents the monthly change in "Amount Past Due."

| Date of Report | Monthly Payment | Amount Past Due | +/- Amount Past Due |
|---|---|---|---|
| 9/21/10 | $6,761 | $13,522 | -- |
| 10/21/10 | $6,761 | $18,539 | + $5,017 |
| 11/22/10 | $6,761 | $23,557 | + $5,018 |
| 12/21/10 | $6,761 | $28,574 | + $5,017 |
| 1/21/11 | $6,761 | $31,946 | + $3,372 |
| 2/22/11 | $6,761 | $36,552 | + $4,606 |
| 3/21/11 | $4,606 | $13,818 | - $22,734 |

*Id.* Plaintiff subsequently disputed the accuracy of Defendant's reporting to the credit agencies. Def.'s MSJ, Ex. R (Aff. of Kenneth D. Huggins) ¶ 4. Defendant states that, upon receiving these objections, it performed an investigation into the accuracy of the information and confirmed the results. *Id.*

**B. Procedural History**

Plaintiff commenced this action on March 24, 2011, bringing various claims against Defendant concerning the mortgage on his property. *See generally* Compl., ECF No. [1]. On November 23, 2011, the Court granted-in-part and denied-in-part Defendant's motion to dismiss, allowing Plaintiff to proceed on four claims: (1) Breach of Contract, (2) Action of Account, (3) Intentional Damage to Credit, to the extent that it was based on Section 1681s-2(b) of Title 15 of the United States Code, and (4) Defamation, to the extent Plaintiff alleged that NFCU published defamatory credit information with three national credit agencies stating that he did not pay his mortgage according to a contract, with either a reckless disregard for the truth or knowing that its statements were false. *Haynes v. Navy Federal Credit Union*, 825 F.Supp.2d 285, 287 (D.D.C. 2011).

In ruling on Defendant's subsequent [85] Renewed Motion for Summary Judgment, the Court dismissed Plaintiff's claims for breach of contract and an action of account. *Haynes v. Navy Federal Credit Union*, No. 11-cv-614, 2014 WL 2591371 (D.D.C. June 10, 2014). With respect to Plaintiff's breach of contract claim, the Court found that NFCU did not "improperly return[] payments that were sufficient to bring the loan current" nor did it "shift[] payments that were sufficient to bring the loan current into a 'suspense account.'" as Plaintiff had alleged in his Complaint. *Id.* at *5 (quoting *Haynes*, 825 F.Supp.2d at 298). Because Plaintiff conceded that he failed to make payments sufficient to bring the loan current, the Court concluded that neither of these actions constituted a breach of contract. *Id.* In addition, the Court dismissed Plaintiff's second claim because an action of account – whether viewed as a free-standing claim or as part of the overall relief in this case – required a breach of contract or fiduciary duty which Plaintiff had not established. *Id.* at *6-7.

However, the Court did not decide Defendant's motion in its entirety, holding in abeyance a ruling on the remainder of Defendant's motion for summary judgment. *Id.* at *7-9. In this remaining portion of the motion, Defendant argues that Plaintiff's claims for intentional damage to credit and defamation should be dismissed because all of the information Defendant reported to credit agencies regarding Plaintiff's loan was accurate. Def.'s Mem. In Supp. of Renewed Mot. for Summ. J., ECF No. [85-1] ("Def.'s Mem.) at 11, 13-14. In its June 10, 2014, Memorandum Opinion, the Court agreed that Defendant had accurately reported the *fact* of Plaintiff's default, but because of questions regarding the details of the financial reporting documents, the Court was uncertain whether Defendant had accurately reported the *extent* of Plaintiff's default. *Id.* Specifically, the Court raised four questions regarding the totals in these financial reporting documents, and ordered Defendant to file a supplemental brief explaining how all of this information was accurate. *Id.* at *8-9. The Court also invited Plaintiff to file a reply brief. *Id.* Defendant subsequently filed its [100] Supplemental Memorandum in Support of its Renewed Motion for Summary Judgment. Plaintiff did not file a reply brief. In the Court's August 27, 2014 [101] Memorandum Order, the Court determined that Defendant had only adequately addressed three of the four questions that the Court had previously posed, and the Court requested additional briefing from the Defendant. Defendant subsequently filed its [102] Second Supplemental Memorandum in Support of Its Renewed Motion for Summary Judgment. Plaintiff did not file any briefing in response, and the Court considers Defendant's Second Supplemental Memorandum unopposed. Accordingly, the Court now returns to the portion of Defendant's [85] Renewed Motion for Summary Judgment previously held in abeyance.
7

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id*. Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record – including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence – in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. FED. R. CIV. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty*

*Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

### III. DISCUSSION

#### A. Legal Framework

The Court's Memorandum Opinion addressing Defendant's Motion to Dismiss allowed Plaintiff's claim for intentional damage to credit to proceed to the extent it was based on an alleged violation of Section 1681s-2(b) of Title 15 of the United States Code. *Haynes*, 825 F.Supp.2d at 295-96. Under 15 U.S.C. § 1681s-2(b), upon being notified by a credit reporting agency of a dispute as to the accuracy of its information, the furnisher of information to a credit reporting agency "has duties under [the Fair Credit Reporting Act] to investigate the disputed information and correct it as necessary." *Ihebereme v. Capital One, N.A.*, 933 F.Supp.2d 86, 111 (D.D.C. 2013). Similarly, the Court allowed Plaintiff's defamation claim to proceed, to the extent that Plaintiff alleged that NFCU published defamatory credit information with three national credit agencies stating that he did not pay his mortgage according to the contract, with either a reckless disregard for the truth or knowing that its statements were false. *Haynes*, 825 F.Supp.2d at 297-98.

In the portion of its Renewed Motion for Summary Judgment previously held in abeyance by this Court, Defendant argues that these claims should be dismissed because all the information it provided to credit agencies regarding Plaintiff's loan was accurate. Def.'s Mem. at 11, 13-14. With respect to Plaintiff's defamation claim, Defendant contends that the accuracy of this information operates as a complete defense. *See Woodfield v. Providence Hosp.*, 779 A.2d 933, 938 (D.C. 2001) ("defamation requires that the statements be false"); *Moss v. Stockard*, 580 A.2d 1011, 1022 (D.C. 1990) (truth is an absolute defense in defamation law). Similarly, this information's accuracy would rebut Plaintiff's only argument against dismissal of his claim for intentional damage to credit. Pursuant to § 1681s-2(b)(1), "creditors, after receiving notice of a consumer dispute from a credit reporting agency, [are required] to conduct a reasonable investigation of their records to determine whether the disputed information can be verified." *Johnson v. MBNA America Bank, N.A.*, 357 F.3d 426, 431 (4th Cir. 2004). "The reasonableness of the investigation is to be determined by an objective standard." *Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 37 (1st Cir. 2010). "The burden of showing the investigation was unreasonable is on the plaintiff." *Id.* "Whether a defendant's investigation is reasonable is a factual question normally reserved for trial; however, summary judgment is proper if the reasonableness of the defendant's procedures is beyond question." *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005). *See also Seamans v. Temple Univ.*, 744 F.3d 853, 864-65 (3d Cir. 2014) (noting that the reasonableness of a defendant's procedures "is normally a question for trial unless the reasonableness or unreasonableness of the procedures is beyond question.") (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 709 (3d Cir. 2010)). Here, Plaintiff has offered no specific challenge to the reasonableness of the procedures used by NFCU to investigate his credit reporting disputes. Rather, he simply points to alleged inaccuracies in its

reporting, apparently as evidence that the procedures used by Defendant were unreasonable. Pl.'s Opp'n at 8-9, 11. Accordingly, to the extent the information reported by Defendant was accurate, Plaintiff's sole argument in support of this claim falls away and no other challenge to the reasonableness of Defendant's procedures remains.

### B. Supplemental Briefing on Accuracy of Credit Reporting

In light of the importance of the accuracy of Defendant's reporting to the remainder of this case, the Court's June 10, 2014, Memorandum Opinion carefully reviewed the financial reporting documents disputed by Plaintiff. *Haynes*, 2014 WL 2591371, at *7-9. The Court agreed with Defendant that it was accurately reporting the *fact* of Plaintiff's default – as Plaintiff conceded his failure to tender the escrow portion of his payment to NFCU. *Id.* at *8. However, reviewing these documents without detailed explanations from Defendant, the Court was uncertain whether Defendant was accurately reporting the *extent* of Plaintiff's default, *i.e.* whether the amount reported in arrears on particular dates conformed to the other financial documents in this case. *Id.* Therefore, the Court requested that Defendant respond, in supplemental briefing, to four questions regarding the interpretation of the information reported to credit agencies about Plaintiff's loan.[2] *Id.* at *8-9.

In the Court's August 27, 2014 Memorandum Order, the Court considered Defendant's first supplemental brief and concluded that it adequately addressed three of the Court's four supplemental questions, explaining why the information reported to credit agencies regarding Plaintiff's loan was accurate.[3] But one issue remained: in its June 10, 2014, Memorandum

---

[2] The Court notes that, with one exception, Plaintiff's summary judgment briefing does not pose these questions. Plaintiff's summary judgment brief does question the continued reporting of $6,761 as the monthly payment after October 1, 2010. Pl.'s Opp'n at 9, 11.

[3] *First*, with respect to the decrease in Plaintiff's total monthly payment from $6,761 to $4,606 shown in the March 21, 2011, report, the Court accepted Defendant's explanation that the amount changed because Defendant's application of several of Plaintiff's incomplete payments

11

Opinion, the Court had ordered Defendant to explain why the amount past due was $13,522 in September 2010. In its August 27, 2014, Memorandum Order, the Court concluded that Defendant's cursory explanation of this figure was inadequate, and requested additional briefing from Defendant. Defendant has now provided an adequate explanation.

Defendant explains that the amount reported as overdue, $13,552, consisted of $6,761 overdue as of August 2010 and an additional $6,761 overdue as of September 2010. With respect to the amount overdue as of September, as Plaintiff has conceded, Plaintiff ceased making complete payments in September 2010. Def.'s Stmt. ¶ 17. Because Plaintiff's monthly payment in September 2010 was $6,761, the amount past due for September 2010 increased by $6,761 over the amount previously past due. Defendant now provides an adequate explanation of the existing $6,761 in this total as well.

Defendant's explanation turns, in part, on the multiple transactions that occurred on August 16, 2010. On that date, first, Plaintiff made a partial payment of $4,701.27, covering only principal and interest, rather than the entire $6,761.07 due for the *July* payment. *Id*. at 3, n.2. *See* Def.'s MSJ, Ex. I at 62. This amount was held in a suspense account as permitted by Deed of Trust for the loan. *See* Def.'s Second Suppl. Mem. at 3 n.2. Second, Defendant levied a late charge on Plaintiff with respect to the payment that was due in *August* 2010. *See id*.; Def.'s MSJ,

---

to the balance of his loan, at that time, satisfied the outstanding September 2010 payment. *Second*, with respect to the increase of the "amount past due" from the last three months of 2010 to January 2011, the Court accepted Defendant's explanation that the revised escrow analysis of December 29, 2010, caused the monthly payments that Plaintiff owed to *decrease*, generating a smaller increase in January 2011 than in the last three months of 2010. This explanation showed that, for each of those months, the total reported was accurate according to the then-applicable escrow calculations. *Third*, with respect to the $22,734 drop in "amount past due" between February 2011 and March 2011, the Court accepted Defendant's explanation that, when both the previous payments applied on March 2, 2011 *and* the underpayment for March 2011 were both applied to the prior balance, the amount reported as past due for March 2011 was accurate. The Court's full analysis of these questions is provided in its August 27, 2014, Memorandum Order, ECF No. [101].

Ex. A at 1. Third, the bank disbursed $6,918.18 from the suspense account, as authorized by the Deed of Trust,[4] and applied it to principal, interest, the escrow account, and late charges – all with respect to the payment due in *July*. *See* Def.'s Suppl. Mem. at 3; Def.'s MSJ, Ex. I at 62. This disbursement did not represent an additional payment by Plaintiff. *See id*. Defendant's explanation also turns on the events that occurred in September 2010. On September 10, 2010, Plaintiff informed Defendant that, beginning with the month of September 2010, he intended to pay only interest and principal to Defendant. *See* Def.'s MSJ, Ex. J at 1. Accordingly, on September 16, Plaintiff paid $3,930.34 to Defendant, which was applied to the payment due in *August*. Def.'s MSJ, Ex. I at 61. He continued to make payments in this same amount in the months that followed. *Id*. at 57-60. In sum, Plaintiff underpaid with respect to the payment due in August 2010, as well as the payment due in September 2010. Because of the underpayments, both the August payment and the September payment – $6,761 due for each – were overdue as of September 21, 2010. Accordingly, the bank's report that $13,522 was overdue as of that date was accurate.

## IV. CONCLUSION

Defendant's supplemental briefing has now adequately addressed all four of the questions raised by the Court's June 10, 2014, Memorandum Opinion regarding the accuracy of Defendant's reporting on the status of Plaintiff's loan. Accordingly, Plaintiff's sole argument in support of Plaintiff's claim of intentional damage to credit falls away. Similarly, the Court's conclusion that the information that Defendant reported was accurate is a complete defense to Plaintiff's defamation claim.

---

[4] The Deed of Trust for the loan allows Defendant to hold partial payments in a suspense account and to apply them to the balance of the loan. *See* Def.'s MSJ, Ex. B (Deed of Trust) at 4.

Accordingly, for the reasons stated, Defendant's [85] Renewed Motion for Summary Judgment is GRANTED with respect to the remaining claims in this action, (1) Plaintiff's claim for Intentional Damage to Credit and (2) Plaintiff's claim for Defamation. Previously, on June 10, 2014, the Court GRANTED Defendant's Renewed Motion for Summary Judgment with respect to Plaintiff's claim for Breach of Contract and Plaintiff's claim for an Accounting and Mandatory Injunctive Relief. Accordingly, JUDGMENT shall enter for Defendant, and this action is DISMISSED in its entirety. An appropriate Order accompanies this Memorandum Opinion.

                                                /s/
                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Judge